**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

**UNITED STATES OF AMERICA**

**v.** **5:21-CR-00422-4**

**ALBERTO MARTINEZ ARAGON**

# O R D E R

Before the Court is the United States of America's ("the Government") Appeal of Order Setting Conditions of Release, Motion for *De Novo* Detention Hearing, and Motion for Stay of Order Setting Conditions of Release. *ECF No. 50*. On October 20, 2026, the Court held a hearing ("the Hearing") on the Motion. *See* Min. Ent. Oct. 20, 2026. For the reasons set forth below, the Court **GRANTS** the Government's Motion, (*ECF No. 50*).

## BACKGROUND

On July 26, 2026, law enforcement officers arrested Defendant and charged him by Complaint with Possession with Intent to Distribute a Controlled Substance, in violation of 18 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A).[1] *ECF No. 50* at 1. The same day, the Government filed its Motion to Detain Defendant without Bond. *ECF No. 8*. The Magistrate Judge held a hearing on August 5, 2026. *ECF No. 50* at 1–2. The Magistrate Judge determined probable cause existed regarding the charged offenses, and concluded conditions of release could be imposed to assure Defendant's future appearance. *Id*. This Court reviewed the transcript from the August 5, 2026, hearing. Task Force Officer ("TFO") Kyle Williams testified at the hearing. *Id*.

[1] On August 19, 2026, Defendant was indicted on the following charges: (1) Count One - Conspiracy to Possess with Intent to Distribute Methamphetamine; (2) Count Two - Conspiracy to Possess with Intent to Distribute Heroin; (3) Count Nine - Possession with Intent to Distribute Heroin; (4) Count Ten – Possession with Intent to Distribute Methamphetamine; and (5) Count Eleven – Possession with Intent to Distribute Heroin.

TFO Williams testified that a confidential human source ("CHS") contacted Defendant to coordinate the sale of half a kilogram of heroin for $6,000. *Id.* Thereafter, on June 30, 2026, Defendant sold the CHS 513.9 grams of heroin for $6,000. *Id.* Defendant stated he was conducting business for a co-defendant in this case. *Id.* Law enforcement officers conducted a search of Defendant's home, and during the execution of the warrant, law enforcement found one firearm, 638.2 grams of suspected heroin, 33.4 grams of suspected methamphetamine, and 31.5 grams of suspected cocaine. *Id.* Defendant's international border crossing records show he traveled to Mexico five times in 2026 and 4 times in 2025. *Id.* Defense counsel submitted a letter from a potential employer indicating the company would hire Defendant if he were to be released. *Id.*

The Pretrial Services Report ("PSR") provides the following information. Defendant was born in 1971 and has lived in San Antonio for the last forty years. PSR at 1–2. His mother lives in San Antonio and he has frequent contact with her. *Id.* Defendant has five siblings and has frequent contact with his family. *Id.* Defendant has lived at his current address for the last thirty years. *Id.* He has been separated from his wife for approximately fourteen years. *Id.* Defendant has four children and three of them live in Piedras Negras, Coahuila, Mexico. *Id.* He travels to Mexico monthly to visit his daughters. *Id.* Defendant owns a firearm which was seized at the time of his arrest. *Id.* Defendant has been employed at Aragon Wood Floors with his brother for the past seven years and earns approximately $850.00 on a weekly basis. *Id.* In June 2010, Defendant received a five-year deferred adjudication term for possession with intent to deliver a controlled substance penalty group one (4 grams–200 grams). *Id.* at 4. This was a felony offense. In July 2010, Defendant was arrested, but not convicted of evading arrest or detention.

In the instant Motion, the Government seeks an order from this Court revoking the Magistrate Judge's Order releasing Defendant with conditions pending trial.

## LEGAL STANDARD

### I. Standard of Review

Under 18 U.S.C. § 3145(a)(1), the Government may file with the district court a motion to revoke a magistrate judge's order releasing a defendant pending trial. The district court reviews a motion to revoke a detention order *de novo* and "must make an independent determination of the proper pretrial detention or conditions for release." *United States v. Rueben*, 974 F.2d 580, 585 (5th Cir. 1992). A District Court has discretion to "support what the magistrate [judge] has actually ordered with additional findings based on its independent consideration of the record before the magistrate [judge] and the additional evidence adduced before it." *United States v. Fortna*, 769 F.2d 243, 250 (5th Cir. 1985).

### II. The Bail Reform Act

The Bail Reform Act, 18 U.S.C. § 3142, governs the release and detention of defendants awaiting trial. A judge may order a defendant detained pending trial based on a finding that the Government has established by a preponderance of the evidence that "no condition or combination of conditions will reasonably assure the appearance of the person," or by clear and convincing evidence that "no condition or combination of conditions will reasonably assure . . . the safety of any other person and the community." 18 U.S.C. § 3142(e)(1), (2); *see also Rueben*, 974 F.2d at 586 ("For pretrial detention to be imposed on a defendant, the lack of reasonable assurance of either the defendant's appearance, or the safety of others or the community, is sufficient; both are not required.").

Section 3142(g) of the act requires a court to consider the following factors in determining whether a person poses a flight risk or a danger to the community:

(1) the nature and circumstances of the offense charged;

(2) the weight of the evidence;

(3) the defendant's history and characteristics, including, among other things, his family ties, length of residence in the community, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release.

18 U.S.C. § 3142(g); *see also United States v. Acosta-Leyva*, 751 F. App'x 594, 595 (5th Cir. 2019) (per curiam).

## III. Rebuttable Presumption

"The existence of probable cause to believe that the defendant committed a crime carrying a maximum term of imprisonment of ten years or more under the Controlled Substances Act creates a rebuttable presumption that no conditions of release exist that would reasonably assure the appearance of the person as required and the safety of the community." *United States v. Hare*, 873 F.2d 796, 798 (5th Cir. 1989). "The risk of continued narcotics trafficking on bail constitutes a risk to the community." *Id.*

"The presumption shifts to the defendant only the burden of producing rebutting evidence, not the burden of persuasion." *Id.* "However, that presumption is not a mere 'bursting bubble' that totally disappears from the judge's consideration after the defendant comes forward with evidence." *Id.* "Following the approach the First Circuit employed in *United States v. Jessup*, [the Fifth Circuit has] held that Congress intended that the presumption 'remain in the case [as] a factor to be considered by the judicial officer.'" *Id.* "Thus the mere production of

evidence does not completely rebut the presumption, and in making its ultimate determination, the court may still consider the finding by Congress that drug offenders pose a special risk of flight and dangerousness to society." *Id*.

"The statute thus seems to create an unusual set of weights and measures in which the burden of persuasion is on the government, not the defendant, but the presumption may be weighed in the evidentiary balance." *Id*. at 798–99. A court should not improperly shift the burden of persuasion to the defendant. *Id*.

In the instant case, "[i]n light of the charged offenses, a rebuttable presumption arises that no condition or combination of conditions will reasonably assure [Defendant's] appearance at trial and the safety of the community." See § 3142(e)(3)(A), (B). Therefore,"[t]he presumption shifts to [the Defendant] the burden of producing rebuttal evidence." *See Hare*, 873 F.2d at 798; *United States v. Trosper*, 809 F.2d 1107, 1110 (5th Cir. 1987). As stated, "[t]he mere production of evidence does not completely rebut the presumption." *Hare*, 873 F.2d at 798, 799; *see* § 3142(e)(1), (3). "In applying the burden-shifting framework, this Court should consider the § 3142(g) factors." *United States v. Singleton*, 2023 WL 534946, at *1 (5th Cir. Jan. 27, 2023).

The Fifth Circuit considered a case involving facts similar to those found in the instant case and concluded that:

> Because the district court's finding on dangerousness is supported by the record, we need not address its determination that Flores was a flight risk. *See Rueben*, 974 F.2d at 586. But in any event, Flores was a flight risk. Flores had a ***prior evading arrest charge***. He had violated probation conditions in the past. And he was arrested for a drug offense, which Congress has determined "as a general rule, pose[s] *special* risks of flight." *United States v. Fortna*, 769 F.2d 243, 251 (5th Cir. 1985) (quotation omitted) (finding that a drug offender with no prior convictions, no history of violence, and significant family and community ties to an area where he owned real estate and resided for 30 years was at a risk of flight because he was involved in international drug trafficking). The district court did not abuse its discretion in concluding that even though Flores had family ties to the area, he still presented a flight risk.

*United States v. Flores*, 53 F.4th 313, 316 (5th Cir. 2022) (emphasis added).

## ANALYSIS

### I. Jail Calls

The Government submitted the transcripts of several telephone calls between the Defendant and an unidentified woman. The Magistrate Judge did not have the benefit of the jail calls when the initial detention determination was made. These calls were initiated by Defendant from the Karnes County Correctional Center. At the Hearing, the Court admitted the recorded calls as exhibits for the purpose of the *de novo* hearing. *See* Min. Ent. Oct. 20, 2026. The Court will briefly detail the jail calls immediately below.

On August 8, 2026, Defendant placed a call from the Karnes detention facility to an unidentified woman. Transcript of Jail Calls at 1. During the call, Defendant expressed his desire to be released from detention and leave San Antonio for Mexico. *Id*. at 3. Defendant and the unidentified woman discussed the idea of selling his home in San Antonio and moving to Piedras Negras, Mexico to open a barbershop. *Id*. at 4. During an August 20, 2026, call, Defendant and the unidentified woman again discussed selling his home and using the proceeds from the sale to live in Mexico. *Id*. at 5–7. Finally, during a September 26, 2026, call, Defendant again discussed the idea of getting a bond, selling his house, moving to Mexico, and reporting to pretrial services from Mexico. *Id*. at 13–15.

### II. Flight Risk and Danger to the Community

The Court first notes Defendant is facing significant punishment in the event he is found guilty of the crimes charged in the Indictment. *See ECF No. 14*. Each count in the indictment carries the same potential punishment of ten years to life imprisonment and a maximum fine of ten million dollars. *See* 18 U.S.C. § 841(b)(1)(A). The Court next notes the charges in this case

involve a rebuttable presumption that no conditions of release exist that would reasonably assure Defendant's appearance as required and the safety of the community.

The Court carefully reviewed the transcript of the hearing before the Magistrate Judge, paying special attention to defense counsel's cross examination, for information that could be viewed as rebutting the presumption in this case. The Court is not convinced Defendant rebutted the presumption, which the Court acutely understands relates to the burden of production and not the burden of persuasion. Even if the Court assumed Defendant rebutted the presumption, the Court can consider, in making its ultimate determination, the congressional finding that drug offenders pose a special risk of flight and dangerousness to society.

Considering the § 3142(g) factors and the congressional finding regarding the special flight risk and danger that alleged drug offenders pose to society, the Court concludes the Government's Motion should be granted.

The Court has already discussed the nature and circumstances of the offenses charged in this case. The evidence in this case appears to be strong. Law enforcement officers used a CHS to conduct the transaction with the Defendant. Officers also conducted a search of Defendant's home and found illegal substances and a firearm. The Court's comment here on the strength of the evidence relates only to its resolution of de novo matter, and is not a comment on the presumption of innocence and the merits of the case which may be litigated at trial under the appropriate burden of proof.

The Court detailed Defendant's history and characteristics, including, the length of time he has lived in San Antonio, the length of time he has lived in the home that was the subject of the search, his employment, and his family and social ties. The Court additionally notes, however, that while TFO Williams testified Defendant's international border crossing records

indicated Defendant traveled to Mexico five times in 2026 and four times in 2025, in the PSR Defendant advised he travels to Mexico monthly to visit his daughters. PSR at 2. The Court also considered information related to Defendant's son. Defendant's son is a co-defendant in this case and is a fugitive, currently believed to live in Mexico.

Defendant made statements in the jail calls indicating his desire to sell his home, move to Mexico with the proceeds, and open a business there. This is a clear indication Defendant is a flight risk because his stated goal is to leave the United States. The Court does not find any statements by Defendant about reporting to Court from Mexico credible because no court would allow such a condition. Finally, the Court agrees with the congressional finding that alleged drug distributers are inherently dangerous and are likely to flee if released.

Therefore, the Court concludes Defendant is a flight risk and danger to the community, and no condition or combination of conditions will reasonably assure the safety of any other person and the community.

## CONCLUSION

Therefore, the Court **ORDERS** that the Government's Appeal of Order Setting Conditions of Release, Motion for *De Novo* Detention Hearing, and Motion for Stay of Order Setting Conditions of Release, (*ECF No. 50*), is **GRANTED**.

The Court further **ORDERS** that United States Magistrate Judge's June 30, 2026, Order releasing Defendant is hereby **REVOKED**.

It is so ORDERED.
SIGNED this 23rd day of October, 2026.

Jason Pulliam

JASON PULLIAM
UNITED STATES DISTRICT JUDGE